**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )   BAP No. AZ-16-1213-JuLB
                                    )
REGIONAL CARE SERVICES CORP.,       )   Bk. No. 14-01383-BMW
                                    )
                Debtor.             )
_____ )
SCOTT B. DAVIS, Creditor            )
Trustee of the Regional Care        )
Services Corp.,                     )
                                    )
                Appellant,          )
                                    )
v.                                  )   **M E M O R A N D U M**[*]
                                    )
ARMANDO BELLOC,                     )
                                    )
                Appellee.           )
_____ )

Argued and Submitted on May 18, 2017
at Phoenix, Arizona

Filed - July 5, 2017

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda Moody Whinery, Bankruptcy Judge, Presiding
_____

Appearances:   Michael J. Pankow of Brownstein Hyatt Farber
               Schreck, LLP argued for appellant; Kyle J.
               Shelton of Shah and Associates, PLLC argued for
               appellee.
               _____

Before:   JURY, LAFFERTY, and BRAND, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Regional Care Services Corporation (RCSC), Casa Grande Regional Medical Center (Casa Grande), and other related entities (collectively, Debtors) each filed chapter 11[1] petitions, which were jointly administered. Appellee, Armando Belloc (Mr. Belloc), received medical care at Casa Grande. Prior to Debtors' bankruptcy filings, Mr. Belloc commenced a malpractice lawsuit against the physicians and others who had provided him care, but did not name Casa Grande as a defendant. About a year later, Mr. Belloc filed another malpractice lawsuit, this time naming Casa Grande as a defendant along with those previously named. At this time, Mr. Belloc learned that Casa Grande was in bankruptcy and stopped prosecution of the state court lawsuit.

He then filed a proof of claim (POC) and a motion for relief from stay in Casa Grande's bankruptcy case. By that time, the claims bar date had passed and Debtors' second amended joint chapter 11 plan had been confirmed. Appellant, Scott B. Davis, the creditor trustee (Creditor Trustee) appointed pursuant to a Creditor Trust Agreement, which was created by the confirmed plan to administer the assets and pay allowed claims, objected to the POC, contending that Mr. Belloc had received notice of the claims bar date and thus his late-filed POC was barred.

At a preliminary hearing, Mr. Belloc's attorney asserted

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

that Mr. Belloc did not receive notice of the claims bar date or of the bankruptcy filing. The bankruptcy court noted that it appeared he had been served, but continued the matter to allow Mr. Belloc's counsel to consider the service issue and to file a motion to allow a late-filed claim if appropriate.

On the eve of the continued hearing, Creditor Trustee submitted a declaration from Kathryn Tran (Tran Declaration), the employee of the entity which had prepared the affidavit of service and served notice of the claims bar date on February 14, 2014. Attached to that declaration was an affidavit of service and a heavily redacted service list that showed Mr. Belloc's name and address. An affidavit of service was also filed on the public docket on February 14, 2014, but the service list of that affidavit did not show Mr. Belloc's name and address.

Counsel for Creditor Trustee argued that Mr. Belloc was served with notice of the bar date and bankruptcy filing, but that due to the federal Health Insurance Portability and Accountability Act (HIPAA), the names and addresses of patients who had potential malpractice claims, including Mr. Belloc, were redacted on the service list which was filed on the public docket. Counsel further represented that the affidavit of service with the attached unredacted service list was filed with the bankruptcy judge's chambers and showed that Mr. Belloc was served. He admitted however that his office had redacted the service list attached to the declaration the night before the continued hearing. Therefore, the service list attached to the declaration was not the unredacted list that had been allegedly filed under seal or delivered to the judge's chambers. Due to

the inconsistencies in the record regarding service on Mr. Belloc, the bankruptcy court found that his POC should be deemed timely filed and granted Mr. Belloc's motion for relief from stay to proceed with the state court litigation.

Creditor Trustee filed a motion for reconsideration under Civil Rule 59(e) to alter or amend the judgment along with an ex parte motion to file the unredacted affidavit of service and service list, showing Mr. Belloc's name and address, under seal. The bankruptcy court granted the ex parte motion and later issued a ruling and order denying the reconsideration motion since there were no grounds to alter or amend the judgment. The bankruptcy court found that the service list with the unredacted affidavit of service was not newly discovered evidence since it was available to Creditor Trustee at the time of the prior hearing.

Creditor Trustee appeals from the bankruptcy court's order denying his motion for reconsideration. For the reasons set forth below, we AFFIRM.

## I. FACTS[2]

Mr. Belloc received care at Casa Grande. On June 25, 2013, he filed a malpractice complaint in the Arizona state court against the physicians and others at Casa Grande that provided him care (Case No. CV2-01300466).

On February 4, 2014, RCSC, Casa Grande and other related entities filed for relief under chapter 11. The cases were

---

[2] We borrow heavily from the facts set forth in the bankruptcy court's June 29, 2016 decision which denied Creditor Trustee's motion to alter or amend the judgment.

-4-

assigned to Judge Hollowell. By order, Debtors' cases were jointly administered under the initial case filed by RCSC.

**A.    The Bar Date Order**

At Debtors' request, the bankruptcy court approved the appointment of Epiq Bankruptcy Solutions, LLC (Epiq) as agent for receiving proofs of claim and providing notices in the case. On February 12, 2014, the bankruptcy court entered an order fixing April 15, 2014, as the deadline for filing proofs of claim (Bar Date Order).

Epiq mailed notice of the Bar Date Order to potential creditors on February 14, 2014, and filed an affidavit of service on February 20, 2014, reflecting service of the Bar Date Order as well as notice of the chapter 11 cases (2/17/14 Affidavit). Because Debtors were obligated to maintain strict patient privacy under HIPPA, the service list filed on the public docket omitted the names and addresses of patients who might assert personal injury or medical malpractice claims against Debtors. Exhibit B to the 2/17/14 Affidavit is a forty-five page service list which did not include Mr. Belloc's name and address.

**B.    Confirmation Of Debtors' Plan**

On May 15, 2014, the bankruptcy court entered an order confirming Debtors' second amended joint chapter 11 plan of reorganization dated March 28, 2014 (Plan). The Plan provided for the sale of Debtors' assets to Banner Health with the distribution of the sale proceeds to creditors. Secured and priority claims — including secured claims of bondholders — and costs of administration were to be paid on the effective date of

the plan or shortly after allowance. The remainder of the sale proceeds were subject to pro rata distribution to general unsecured creditors with reserves for disputed claims in the full face amount of the claim (except that insured personal injury claims required reserves only for the deductible amount).

The Plan provided for the creation of a Creditor Trust and appointment of a trustee who would, among other things, analyze, object to and resolve claims, prosecute, abandon, and resolve causes of action, make distributions to holders of allowed claims and wind-down the estates.

On June 30, 2014, the bankruptcy court granted Debtors' motion to approve the Creditor Trust Agreement. Pursuant to the agreement, Mr. Davis was appointed Creditor Trustee.

**C.   Mr. Belloc's POC And First Motion For Relief From Stay**

On July 16, 2014, Mr. Belloc filed a new malpractice complaint in the Arizona state court, this time naming Casa Grande as a defendant along with the physicians and others that had provided him care (Case No. CV2-01401737). After this filing, Mr. Belloc learned that Casa Grande was in bankruptcy and stopped prosecuting the case.

On August 1, 2014, Mr. Belloc filed a POC in Casa Grande's bankruptcy case, designated as Claim No. 45. On the same date, he filed a motion for relief from stay to continue the state court litigation (First Relief Motion). Creditor Trustee objected, contending that Mr. Belloc's POC was time barred since he was served with the Bar Date Order. Creditor Trustee further argued that Mr. Belloc had not established cause for relief from stay and allowing him to proceed would have an adverse impact on

the bankruptcy estate and creditors.

On August 19, 2014, Debtors' cases were transferred from Judge Hollowell to Judge Whinery due to Judge Hollowell's retirement from the bench.

On October 15, 2014, the bankruptcy court held a preliminary hearing on the First Relief Motion. The court noted that Mr. Belloc missed the bar date and apparently was served. Counsel for Creditor Trustee asserted that Mr. Belloc had received notice of the case and the Bar Date Order as set forth in the 2/17/14 Affidavit. The bankruptcy court continued the hearing to November 18, 2014, to allow Mr. Belloc's counsel to consider the service issue and to file a motion to allow a late-filed claim if appropriate.

**D.   The November 18, 2014 Hearing**

On October 17, 2014, Creditor Trustee's counsel sent a letter to Mr. Belloc's counsel explaining that the filed copy of the 2/17/14 Affidavit and service list would not show any information relating to Mr. Belloc due to HIPPA regulations.

On November 5, 2014, Mr. Belloc filed his motion for an order approving the late filing of his POC and for relief from the automatic stay so that he could continue his lawsuit against Casa Grande and the other defendants. The motion denied that Mr. Belloc received notice of the bankruptcy cases or the Bar Date Order. It also contended that the bankruptcy court should permit Mr. Belloc to file a late POC based on his excusable neglect.

In opposition, Creditor Trustee argued that Mr. Belloc had provided no basis for the court to consider his late-filed POC,

other than his denial that he received the notice of the Bar Date Order. Creditor Trustee next argued that Mr. Belloc provided no evidence to rebut the presumption that the Bar Date Order was mailed to his address and received. Last, Creditor Trustee asserted that the standards for excusable neglect were not met because Mr. Belloc offered no reason for the delay and if his claim were deemed timely filed it would prejudice Debtors' estates.

In a supporting declaration, Creditor Trustee explained that the negotiated purchase price for Debtors' assets would result in a full or close to full payout to creditors. According to Creditor Trustee, Debtors solicited votes from creditors based on this analysis. He also declared that Mr. Belloc was served with notice of the Bar Date Order and the bankruptcy cases on February 14, 2014. Finally, he stated that in his opinion, allowing the late-filed POC would cause administration of the Creditor Trust to become impracticable and the ultimate wind-down of the estates unreasonably protracted.

On November 17, 2014, the day before the continued hearing, Creditor Trustee filed the declaration of Kathryn Tran (Tran Declaration), a senior consultant of Epiq. She declared that she mailed notice of the Bar Date Order on February 14, 2014, as indicated on the 2/17/14 Affidavit at Exhibit A.[3] She further declared that Mr. Belloc was served and that his mail was not returned. Attached as Exhibit B was the 45 page service list.

---

[3] The filed proof of service was signed by Christina Siguenza, not Ms. Tran. Nothing in Creditor Trustee's papers explains this discrepancy.

-8-

Mr. Belloc's name and address was listed on page 4 of 45.

At the November 18, 2014 hearing, the bankruptcy court noted that the 2/17/14 Affidavit at Docket #111 did not show Mr. Belloc. Counsel for Creditor Trustee explained that a list of personal injury claimants was not filed on the public docket but filed under seal or delivered to Judge Hollowell's chambers and that list would reflect service on Mr. Belloc. Counsel also referenced the Tran Declaration and acknowledged that the service list originally attached to the 2/17/14 Affidavit had been altered by his office prior to its filing the night before. Therefore, that service list was not actually the unredacted list that had allegedly been filed under seal or delivered to Judge Hollowell's chambers. Counsel informed the bankruptcy court that he would provide an unredacted version of the list that was filed. The bankruptcy court noted that Judge Hollowell had approved one filing under seal, but the court was not aware of any affidavits of service filed under seal.

In the end, the court found that the evidence submitted was not sufficient to show that service was provided to Mr. Belloc. The court further found that even if service was provided, the excusable neglect standard was met. The bankruptcy court deemed the POC timely filed and granted Mr. Belloc relief from stay to proceed in state court. The bankruptcy court entered an order consistent with its ruling on December 8, 2014.

**E.    Creditor Trustee's Motion For Reconsideration**

On December 22, 2014, Creditor Trustee filed an Ex-Parte Motion to File Unredacted Affidavits of Service Under Seal to Comply with HIPAA, which requested authority to file unredacted

-9-

Affidavits of Service relating to the notice of case filings and the Bar Date Order. The ex parte motion explained that Epiq prepared two affidavits of service - one which was filed with the court that redacted the names and addresses of the 817 employees and 16 patients such that there was no evidence of them being served and one unredacted affidavit of service that included the names and addresses of the 817 employees and 16 patients. The unredacted affidavit however was never made part of the record under seal or otherwise. The court granted the ex parte motion by order entered on January 15, 2015, and the unredacted affidavit of service was filed under seal the next day.

Creditor Trustee also filed a motion for reconsideration under Rule 9023, which incorporates Civil Rule 59, on January 15, 2015. There, he maintained that the bankruptcy court's previous findings regarding service and excusable neglect were made without taking evidence. Creditor Trustee explained that he investigated the service issue further and found that the unredacted copy of the affidavit of service and mailing list, although prepared contemporaneously with the filing of the 2/17/14 Affidavit at Docket #111, was not provided to Judge Hollowell's chambers or filed under seal.

Creditor Trustee also informed the court that he learned that Mr. Belloc had previously commenced a lawsuit on his medical malpractice claim well before the bankruptcy filing of Casa Grande, but did not sue the hospital at that time. According to Creditor Trustee, these facts showed that Mr. Belloc made a conscious decision, as opposed to an alleged

failure of notice, not to assert a claim against Casa Grande. Creditor Trustee argued: "This new information calls into question [Mr.] Belloc's representations and highlights the need for an evidentiary record in this matter."

Creditor Trustee also asserted that he could demonstrate that Mr. Belloc was served with the Bar Date Order and "apologize[d] for the error in describing this point in earlier hearings." Creditor Trustee further argued that the bankruptcy court's decision to rule without taking evidence was erroneous and in this case would result in manifest injustice. Creditor Trustee contended that as offered at the November 18, 2014 hearing on this matter, the Epiq claims agent would be available to provide testimony to substantiate both underlying service and the preparation of the full certificate of service with respect to the unredacted service list.

Attached to the motion was the letter that was sent to Belloc's counsel, the unredacted Affidavit of Service with Belloc's name and address, and the complaint that Mr. Belloc filed against the defendant-doctors in February 25, 2013.

Almost a year and a half later,[4] on June 29, 2016, the bankruptcy court issued a ruling and order denying Creditor Trustee's motion for reconsideration. The bankruptcy court noted that Creditor Trustee failed to submit a credible affidavit of service to the court prior to the November 18, 2014

---

[4] The court did not rule on the motion for reconsideration until Creditor Trustee set it for hearing after it went unresolved for more than a year. Meanwhile, the state court litigation between Mr. Belloc and Debtor progressed.

-11-

hearing that reflected that Mr. Belloc was served with the Bar Date Order. The court further noted that the 2/17/14 Affidavit filed at Docket #111, "clearly does not list Mr. Belloc as having received notice." The court also observed that the Tran Declaration, while stating that Mr. Belloc was on the service list, attached and referenced the 2/17/14 Affidavit or what looks like it, with the exception that Exhibit B lists Mr. Belloc and contains significant redactions.

The court further found that Creditor Trustee had access to the unredacted affidavit of service long before the November 18, 2014 hearing, and thus it was not new evidence that would justify the granting of his motion. Finally, the court found that none of the other elements for granting a motion to alter or amend a judgment were met in the case; there was no intervening law or manifest error of law or fact and no manifest injustice to be corrected. In the end, the court concluded that Creditor Trustee failed to meet his burden to establish a basis for altering or amending the order under Civil Rule 59(e). Due to its decision on the notice issue, the court found it unnecessary to address whether the standards for excusable neglect had been met.

On July 12, 2016, Creditor Trustee filed a timely notice of appeal of the bankruptcy court's ruling and order denying his motion for reconsideration.[5]

_____

[5] Although the notice of appeal refers only to the order denying Creditor Trustee's motion for reconsideration, the appeal of the order denying a Rule 9023 motion is sufficient to bring up the merits of both the underlying order and the Rule 9023 motion
(continued...)

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.    Did the bankruptcy court err in granting Mr. Belloc's Motion to Approve Late-Filed Proof of Claim and for Relief from the Automatic Stay based on the evidence submitted at the November 18, 2014 hearing?

B.    Did the bankruptcy court err in overruling Creditor Trustee's Motion for Reconsideration?

C.    Did the bankruptcy court err by not holding an evidentiary hearing?

## IV.  STANDARDS OF REVIEW

To the extent certain facts regarding service of process are disputed, those facts are reviewed under the clearly erroneous standard.  See Keys v. 701 Mariposa Project, LLC (In re 701 Mariposa Project, LLC), 514 B.R. 10, 14 (9th Cir. BAP 2014) (citing S.E.C. v. Internet Sols. for Bus. Inc., 509 F.3d 1161, 1165 (9th Cir. 2007)).  Findings of fact are clearly erroneous if they are "illogical, implausible, or without support in the record."  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

We review the bankruptcy court's denial of a motion under

[5](...continued)
since the Rule 9023 motion was filed within fourteen days after entry of the underlying order.  See Watson v. Shandell (In re Watson), 192 B.R. 739, 742 n.3 (9th Cir. BAP 1996), aff'd, 116 F.3d 488 (9th Cir. 1997)(table).

Civil Rule 59(e) under the abuse of discretion standard. Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010).

We also review the bankruptcy court's decision not to conduct an evidentiary hearing under the abuse of discretion standard. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004).

Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id.

## V. DISCUSSION

**A. The bankruptcy court did not err in granting Mr. Belloc's Motion to Approve Late-Filed Proof of Claim and for Relief from the Automatic Stay.**

There is no question that Mr. Belloc's POC was filed after the claims bar date. The crux of this appeal is whether Mr. Belloc received notice of the Bar Date Order. It is a fundamental principle of due process that known creditors of a debtor are entitled to actual notice of a claims bar date before their claims can be extinguished. City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293 (1953). This is true in chapter 11 cases even where the creditor may have actual

-14-

knowledge of the pendency of the bankruptcy. Id. at 297. A creditor in a reorganization has a "right to assume" that he will receive all required notices before his claim will be forever barred. Id.; see also Levin v. Maya Constr. Co. (In re Maya Constr. Co.), 78 F.3d 1395, 1399 (9th Cir. 1996) (known creditors are entitled to official or formal notice of a debtor's bankruptcy filing and claims bar date).

### 1. The Mailbox Presumption

Rule 9006(e) provides that "[s]ervice of process and service of any paper other than process or of notice by mail is complete on mailing." While the language suggests that actual receipt of the notice may be unnecessary, courts in this Circuit have applied the mailbox presumption to bankruptcy cases to support a finding of receipt. See Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 206 (9th Cir. 1991) (applying presumption to dischargeability of debt complaint); Cuna Mutual Ins. Group v. Williams (In re Williams), 185 B.R. 598 (9th Cir. BAP 1995) (same). In the common law, "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. U.S., 285 U.S. 427, 430 (1932) (citing Rosenthal v. Walker, 111 U.S. 185, 193 (1884)). "The rule is a key support of the bankruptcy system's notice by mail." In re Williams, 185 B.R. at 599. A presumption of receipt is established by a showing of proper mailing. Lewis v. U.S., 144 F.3d 1220, 1222 (9th Cir. 1998); Herndon v. De La Cruz (In re De la Cruz), 176 B.R. 19, 22 (9th Cir. BAP 1994).

## 2. Analysis

At the preliminary hearing and the November 18, 2014 hearings, Mr. Belloc maintained in his pleadings - albeit not by declaration - that he received no notice of the Bar Date Order. At the November 18, 2014 hearing, the bankruptcy court noted that the 2/17/14 Affidavit and service list filed in the bankruptcy court at Docket #111 did not show Mr. Belloc's name and address. Counsel for Creditor Trustee argued that in order to comply with HIPPA, a redacted affidavit of service was filed on the public docket but he thought an unredacted affidavit of service and service list was filed under seal or with Judge Hollowell's chambers and that this unredacted version would show Mr. Belloc had been served with notice of the Bar Date Order. However, this unredacted version that he spoke about was clearly not the one attached to the Tran Declaration.

As the bankruptcy court noted, counsel acknowledged that the service list attached as Exhibit B to the 2/17/14 Affidavit had been heavily redacted by his office the night before it was filed in the bankruptcy court. The bankruptcy court found that the redaction of Exhibit B which contained Mr. Belloc's name and address destroyed the integrity and credibility of the Tran Declaration.

Therefore, since there was no corroborating evidence showing that Mr. Belloc had been served with notice of the Bar Date Order, the mailbox presumption did not arise and there was nothing for Mr. Belloc to rebut. While Creditor Trustee complains that Mr. Belloc provided no evidence, it was Creditor Trustee's burden to show that Epiq had served Mr. Belloc by mail

-16-

with notice of the Bar Date before the presumption of receipt would arise. He failed to meet that burden at the November 18, 2014 hearing. No documents or other objective evidence effectively contradicted Mr. Belloc's contention that he did not receive notice of the Bar Date Order. Given the absence of such evidence, we cannot say the trial court's interpretation of the facts is implausible on its face. Accordingly, the bankruptcy court did not err in granting Mr. Belloc's Motion to Approve Late-Filed Proof of Claim and for Relief from the Automatic Stay.

**B.     The bankruptcy court did not err in denying Creditor Trustee's Motion for Reconsideration.**

Creditor Trustee filed his motion for reconsideration under Rule 9023, which incorporates Civil Rule 59(e). Civil Rule 59(e) motions "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009); Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). Civil Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures [or] allow a party to introduce new evidence or advance new arguments that could and should have been presented to the [bankruptcy] court prior to the judgment." DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001). Matters that were not presented in the first instance by a well-represented party are not considered on a motion for reconsideration. See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Although Civil

Rule 59(e) permits a bankruptcy court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). "Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the [bankruptcy] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Id.

As the bankruptcy court found, Creditor Trustee presented no newly discovered evidence, nor did he establish that the court had made a manifest error of law or fact. While Creditor Trustee filed the unredacted affidavit of service showing service upon Mr. Belloc, this evidence was not "newly discovered" for purposes of Civil Rule 59(e) if it "could have been discovered with reasonable diligence" at the time of trial. Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987). Creditor Trustee made no showing, or even any argument, why he could not have obtained the unredacted affidavit prior to the November 18, 2014 hearing. Therefore, it was "well within" the bankruptcy court's discretion not to consider it. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 n. 6 (9th Cir. 1994) (Where the moving party does not make any showing that an affidavit was unavailable at the time of trial, rejection of such a tardy affidavit is "well within" a court's discretion.) Likewise, Creditor Trustee made no showing that he did not nor could not have discovered Mr. Belloc's 2013 lawsuit until after the November 18, 2014 hearing.

In short, the court concluded that there was no basis for granting his motion. That conclusion was not an abuse of discretion.

**C.    The bankruptcy court properly exercised its discretion to not hold an evidentiary hearing.**

Creditor Trustee also argues that the bankruptcy court erred by not holding an evidentiary hearing. A bankruptcy court's decision on whether to conduct an evidentiary hearing is reviewed for an abuse of discretion. Murphy v. Schneider Nat'l, Inc., 362 F.3d at 1139.

As an initial matter, many of Creditor Trustee's contentions regarding an evidentiary hearing are directed towards the bankruptcy court's lack of specific findings regarding Mr. Belloc's excusable neglect. However, in its decision denying Creditor Trustee's motion for reconsideration, the bankruptcy court rested its final decision on the issue of notice and not excusable neglect. Therefore, we consider only whether an evidentiary hearing was warranted on the issue of notice in connection with the November 18, 2014 hearing.[6]

Creditor Trustee argues on appeal that he submitted

---

[6] We observe that Creditor Trustee did not file his motion for reconsideration under Civil Rule 59(a). Under that subsection, a court has the discretion to reopen a judgment if one has been entered, take additional testimony, amend findings of fact and conclusion of law, or make new findings and conclusions. See Civil Rule 59(a). Therefore, we cannot find the bankruptcy court abused its discretion by not holding an evidentiary hearing in connection with the motion for reconsideration based on Creditor Trustee's attempt to introduce evidence to rebut what it considered were "unsupported conclusions" of the bankruptcy court.

-19-

evidence that Mr. Belloc was properly mailed notice and that Mr. Belloc offered nothing in return. According to Creditor Trustee, the bankruptcy court gave greater weight to nonexistent evidence from Mr. Belloc than a sworn statement indicating the name and address to which notice was sent: "To have weighed such evidence without an evidentiary hearing was error." Creditor Trustee also maintains that his counsel "offered live evidence twice during the November 18, 2014 hearing." We are not persuaded by these arguments.

Civil Rule 43(c), which is applicable to contested matters under Rule 9017, provides: "When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." Under this rule, bankruptcy courts have "wide discretion" in deciding whether to take oral testimony at an evidentiary hearing. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 858 (9th Cir. 1992); accord Garner v. Shier (In re Garner), 246 B.R. 617, 624 (9th Cir. BAP 2000). Further, Local Rule 9014-2 sets out the procedures governing hearings on contested matters in the bankruptcy court for the District of Arizona. Local Rule 9014-2(a) states that "all hearings scheduled on contested matters will be conducted without live testimony except as otherwise ordered by the court. If, at such a hearing, the court determines that there is a material factual dispute, the court will schedule a continued hearing at which live testimony will be admitted." Alternatively, subsection (b) of the rule sets forth the procedure for a party to request that the court take live

testimony.[7]

Here, while counsel for Creditor Trustee made some generic comments during the November 18, 2014 hearing regarding live testimony, he did not invoke the procedures available under Local Rule 9014-2(b) to request that Creditor Trustee be allowed to present live testimony, nor do we see anywhere in the record that an evidentiary hearing was requested before Creditor Trustee filed his motion for reconsideration.  Creditor

---

[7] Subsection (b) provides:

(1) Any party filing a motion, application, or objection who reasonably anticipates that its resolution will require live testimony may file an accompanying motion for an evidentiary hearing, stating:

    (A)   The estimated time required for receipt of all evidence, including live testimony;
    (B)   When the parties will be ready to present such evidence;
    (C)   The estimated time required to complete all formal and informal discovery;
    (D)   Whether a Bankruptcy Rule 7016 Scheduling Conference should be held; and,
    (E)   Whether any party who may participate at the evidentiary hearing is appearing pro se.

(2) The party requesting an evidentiary hearing shall accompany the motion with a form of order.

(3) Any response to a motion for an evidentiary hearing shall be served and filed within seven days of service of the motion.  The time computation and enlargement provisions of Rule 9006 shall not apply to the response deadline, except that the responding party shall have an additional 3 days to respond if the motion is served by mail.

(4) Based upon the motion and any responses, the court will either finalize the order setting the matter for hearing or request that the parties appear for a Bankruptcy Rule 7016 Scheduling Conference.

Trustee's contention that an evidentiary hearing was necessary on the merits, made for the first time after the bankruptcy court had ruled, came too late: he had already waived his right to an evidentiary hearing. In sum, the bankruptcy court did not abuse its discretion by failing to hold an evidentiary hearing; an evidentiary hearing was neither asked for nor required given the evidence presented.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.